United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5               FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7   SBO PICTURES, INC., d/b/a WICKED ) | Case No. 11-4220 SC |
|     PICTURES, a California          ) | |
| 8   Corporation,                    ) | ORDER GRANTING IN PART |
|                                     ) | PLAINTIFF'S EX PARTE |
| 9            Plaintiff,             ) | APPLICATION FOR LEAVE TO |
| 10                                  ) | TAKE EXPEDITED DISCOVERY, |
|         v.                          ) | SEVERING DOE DEFENDANTS 2- |
| 11                                  ) | 3036 FROM ACTION, AND |
|     DOES 1-3036,                    ) | DISMISSING CLAIMS AGAINST |
| 12                                  ) | DOE DEFENDANTS 2-3036 |
| 13           Defendants.            ) | |
|                                     ) | |

14

15   **I.    INTRODUCTION**

16        On August 26, 2011, Plaintiff SBO Pictures, Inc., d/b/a Wicked

17   Pictures ("Plaintiff") filed a Complaint against 3036 unnamed

18   defendants ("Doe Defendants"), alleging copyright infringement.

19   ECF No. 1 ("Compl.").  The same day, Plaintiff filed an Ex Parte

20   Application for Leave to Take Limited Discovery, seeking leave to

21   take third-party discovery in order to unearth the identities of

22   Doe Defendants.  ECF No. 4 ("Application").  For the reasons set

23   forth below, the Court GRANTS IN PART Plaintiff's Application,

24   SEVERS Doe Defendants 2-3036 from this action, and ORDERS that the

25   claims against Doe Defendants 2-3036 be dismissed due to improper

26   joinder.

27   ///

28   ///

**United States District Court**
For the Northern District of California

**II. BACKGROUND**

Plaintiff is a motion picture production company. Compl. ¶ 7. Plaintiff alleges that it owns the copyright to the film "XXX Avengers" ("the Motion Picture"). Id. Plaintiff claims that the Motion Picture is the subject of the valid Certificate of Registration No. PA 1-745-351, issued June 10, 2011 by the United States Copyright Office, and that Plaintiff owns the registration. Id. ¶ 8.

Plaintiff alleges that Doe Defendants used "an online media distribution system, in this case a BitTorrent network, a 'peer to peer' network (or a 'P2P' network), to reproduce [and distribute] at least one copy of the Motion Picture." Id. ¶ 10. According to Plaintiff, "[e]ach Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works." Id. ¶ 11. Plaintiff alleges that all Doe Defendants acted in concert by participating in the same BitTorrent "swarm,"[1] to achieve unlawful reproduction and distribution of the

---

[1] Jon Nicolini ("Nicolini"), Vice President of Plaintiff's contractor, Copyright Enforcement Group, submitted a declaration in support of Plaintiff's Request. ECF No. 5 ("Nicolini Decl."). He explains how P2P networks distribute infringing copies of copyrighted works through file sharing software such as BitTorrent. The process begins when one user accesses the Internet through an Internet service provider and intentionally makes a digital file of a work available to the public from his or her computer. Nicolini Decl. ¶ 6. This file is referred to as the first "seed." Id. Other users, who are referred to as "peers," then access the Internet and request the file. Id. These users engage each other in a group, referred to as a "swarm," and begin downloading the seed file. Id. As each peer receives portions of the seed, that

**United States District Court**
For the Northern District of California

1  Motion Picture.  Id.  Plaintiff alleges that Doe Defendants'

2  actions have violated Plaintiff's rights under the Copyright Act,

3  17 U.S.C. §§ 101, et seq.

4       Plaintiff attaches to the Complaint a list allegedly

5  containing the Internet Protocol ("IP") addresses of each Doe

6  Defendant, the date and time of each alleged infringement, and the

7  Internet Service Provider ("ISP") associated with each IP address.

8  Compl. Ex. A ("IP Log").  Plaintiff's contractor, Copyright

9  Enforcement Group ("CEG"), declares that through monitoring

10 Internet-based infringement of Plaintiff's copyrighted content, it

11 confirmed that each Doe Defendant reproduced at least a substantial

12 portion of the Motion Picture.  Nicolini Decl. ¶¶ 17-19, 22.

13      Plaintiff argues that due to the anonymous nature of the peer-

14 to-peer file distribution system used by Doe Defendants, it can

15 only identify the names and addresses of individuals associated

16 with these IP addresses by subpoenaing the ISPs.  Application at 6,

17 9.  Plaintiff seeks leave to serve third-party subpoenas on dozens

18 of ISPs to compel them to provide the name, address, telephone

19 number, and e-mail address of each Doe Defendant.  See IP Log;

20 Application Ex. 1 ("Sample Subpoena").

21

22 **III.  LEGAL STANDARD**

23      Generally, a party may not initiate discovery before the

24 parties have met and conferred pursuant to Federal Rule of Civil

25 Procedure 26(f).  However, a court may authorize earlier discovery

26 "for the convenience of parties and witnesses and in the interests

27 _____

28 peer makes those portions available to other peers in the swarm.
   Id.

3

**United States District Court**
For the Northern District of California

1  of justice." Fed. R. Civ. P. 26(d). The requesting party must

2  demonstrate good cause for earlier discovery. See Semitool, Inc.

3  v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002).

4  "Good cause may be found where the need for expedited discovery, in

5  consideration of the administration of justice, outweighs the

6  prejudice to the responding party." Id.

7       According to the Ninth Circuit:

8              [W]here the identity of alleged defendants will
               not be known prior to the filing of a
9              complaint[,] . . . the plaintiff should be
               given an opportunity through discovery to
10             identify the unknown defendants, unless it is
               clear that discovery would not uncover the
11             identities, or that the complaint would be
               dismissed on other grounds.

12

13  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). For

14  leave to conduct discovery to identify a Doe defendant, the moving

15  party must: (1) identify the defendant with enough specificity to

16  allow the Court to determine whether the defendant is a real person

17  or entity who could be sued in federal court; (2) recount the steps

18  taken to locate the defendant; (3) show that its action could

19  survive a motion to dismiss; and (4) file a request for discovery

20  with the Court identifying the persons or entities on whom

21  discovery process might be served and for which there is a

22  reasonable likelihood that the discovery process will lead to

23  identifying information. Columbia Ins. Co. v. seescandy.com, 185

24  F.R.D. 573, 578-80 (N.D. Cal. 1999) ("Columbia Ins.").

25       In the context of parties seeking discovery in alleged online

26  piracy, the court must balance "the need to provide injured parties

27  with [a] forum in which they may seek redress for grievances"

28  against "the legitimate and valuable right [of Internet users] to

1  participate in online forums anonymously or pseudonymously . . .

2  without fear that someone who wishes to harass or embarrass them

3  can file a frivolous lawsuit and thereby gain the power of the

4  court's order to discover their identity."  Id. at 578.

5

6  **IV.  DISCUSSION**

7     The Court is satisfied that Plaintiff has met the first,

8  second, and fourth Columbia Insurance factors.  However, the Court

9  finds that Plaintiff has not established that it could satisfy the

10  third Columbia Insurance factor because it has not shown that the

11  Complaint could survive a motion to dismiss based on improper

12  joinder.

13     **A.   Permissive Joinder Under Rule 20**

14     Federal Rule of Civil Procedure 20(a) provides that parties

15  may be joined in a single lawsuit where the claims against them

16  arise from a single transaction or a series of closely related

17  transactions.  If defendants do not satisfy the test for permissive

18  joinder, a court may sever the misjoined parties, "so long as no

19  substantial right will be prejudiced by the severance."  Coughlin

20  v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) (citation omitted);

21  see Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for

22  dismissing an action.").

23     In this case, the Court finds that Plaintiff has failed to

24  satisfy the Rule 20 requirements for permissive joinder.  Plaintiff

25  argues that the Doe Defendants are properly joined because they

26  infringed the same copyrighted work in cooperation with each other

27  by exchanging portions of the work with one another (i.e., they

28  were a part of the same "swarm"), and the nature of the BitTorrent

**United States District Court**
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1  technology requires concerted action with regard to each swarm.

2  Application at 12-14.

3      Courts in this district are divided as to whether Rule 20 is

4  satisfied by virtue of the fact that defendants were part of the

5  same BitTorrent swarm.  Compare Hard Drive Prods. v. Does 1-42, No.

6  CV 11-01956 EDL, 2011 U.S. Dist. LEXIS 105229, at *2 (N.D. Cal.

7  Aug. 3, 2011) (Rule 20 satisfied because defendants participated in

8  a common BitTorrent swarm), with Third Degree Films v. Does 1-3577,

9  No. C 11-02768 LB, 2011 U.S. Dist. LEXIS 128030, at *9 (N.D. Cal.

10 Nov. 4, 2011) (Rule 20 not satisfied even though defendants were

11 part of a common swarm) and Diabolic Video Prods., Inc. v. Does 1-

12 2099, No. 10-CV-5865-PSG, 2011 U.S. Dist. LEXIS 58351, at *10-11

13 (N.D. Cal. May 31, 2011) (same).

14     Here, the Doe Defendants' alleged participation in the same

15 swarm spanned approximately a four-month period from May 2011

16 through August 2011.  See IP Log.  The Court cannot conclude that a

17 Doe Defendant who allegedly downloaded or uploaded a portion of the

18 Motion Picture on May 11, 2011, a Doe Defendant who allegedly did

19 the same on August 10, 2011, and over three thousand Doe Defendants

20 who allegedly did the same in the interim, were engaged in the

21 single transaction or series of closely-related transactions

22 recognized under Rule 20.  See Third Degree Films, 2011 U.S. Dist.

23 LEXIS 128030, at *9 (Even though defendants were allegedly part of

24 same swarm, "permissive joinder is inappropriate, particularly

25 given that 3,577 Doe defendants downloaded the protected work at

26 various dates and times ranging from November 11, 2010, to June 1,

27 2011.").

28 ///

**B.     Other Factors Bearing on Whether Joinder is Proper**

In addition to the Rule 20(a) criteria, a court must examine whether permissive joinder "would comport with the principles of fundamental fairness or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000)(internal quotation omitted).  Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved.  IO Group, Inc. v. Does 1-435, No. C 10-4382 SI, 2011 U.S. Dist. LEXIS 14123, at *18 (N.D. Cal. Feb. 3, 2011); Hard Drive Prods., Inc. v. Does 1-188, No. C-11-01566 JCS, 2011 U.S. Dist. LEXIS 94319, at *17 (N.D. Cal. Aug. 23, 2011).

Here, the Court finds that even if Rule 20 were satisfied, other concerns weigh against joinder.  First, joinder has the potential to produce an unfair result for some, if not many, Doe Defendants.  Plaintiff defines Doe Defendants as the ISP subscribers whose internet connection was allegedly used to pirate the Motion Picture.  Compl. ¶ 5.  As many courts have noted, however, the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes.  For example, "[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works."  Third Degree Films, 2011 U.S. Dist. LEXIS 128030, at *9.  By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, "Plaintiff's sought-after discovery

7

**United States District Court**
For the Northern District of California

1  has the potential to draw numerous innocent internet users into the

2  litigation, placing a burden upon them that weighs against allowing

3  the discovery as designed."  Hard Drive Prods., Inc. v. Does 1-130,

4  No. C-11-3826 DMR, 2011 U.S. Dist. LEXIS 132449, at *6 (N.D. Cal.

5  Nov. 16, 2011).  If the Court were to grant Plaintiff's

6  Application, Plaintiff would likely send settlement demands to the

7  individuals whom the ISP identified as the IP subscriber.[2]  "That

8  individual -- whether guilty of copyright infringement or not --

9  would then have to decide whether to pay money to retain legal

10  assistance to fight the claim that he or she illegally downloaded

11  sexually explicit materials, or pay the money demanded.  This

12  creates great potential for a coercive and unjust 'settlement.'"

13  Id. at *9.

14      Indeed, the Court is concerned that Plaintiff's motive for

15  seeking joinder of over three thousand Doe Defendants in one action

16  may be precisely to coerce such settlements.  See IO Group, Inc.,

17  2011 U.S. Dist. LEXIS 14123, at *19.  As Plaintiff's counsel surely

18  knows, trial of a suit with thousands of individual defendants

19  would present unmanageable difficulties.  The vast majority of

20  these mass copyright infringement suits are resolved through

21  settlement once the plaintiff secures the information identifying

22  the Does.  Id.  As Judge Beeler has noted, Plaintiff's counsel in

23  this action has filed at least ten other mass copyright

24  infringement suits against large numbers of Doe defendants.  See

25  Patrick Collins, Inc. v. Does 1-3757, No. C 10-05886 LB, 2011 U.S.

26  Dist. LEXIS 128029, at *6-7 (N.D. Cal. Nov. 4, 2011).  The court in

27  _____

28  [2] Indeed, Plaintiff has already sent settlement demands to the ISPs
with a request that they be forwarded to the subscribers.  Nicolini
Decl. ¶ 21.

**United States District Court**
For the Northern District of California

1  Patrick Collins reviewed the dockets in those cases and determined

2  that no plaintiff ever filed proof of service upon a single

3  defendant, even after a number of defendants were identified and

4  settled with plaintiffs.  Id. at *7.  Instead, the plaintiffs

5  "appear[ed] content to force settlements without incurring any of

6  the burdens involved in proving their cases."  Id.  It therefore

7  appears that Plaintiff's motive in joining over three thousand

8  defendants in one action is to keep its own litigation costs down

9  in hopes that defendants will quickly agree to a settlement.

10  However, "while the courts favor settlements, filing one mass

11  action in order to identify hundreds of doe defendants through pre-

12  service discovery and facilitate mass settlement, is not what the

13  joinder rules were established for."  Id. (internal quotation

14  omitted).

15      Additionally, the Court finds that Plaintiff would not suffer

16  undue prejudice by severing Doe Defendants 2-3036 and dismissing

17  them from the case without prejudice.  The earliest date of an

18  illegal download identified in Plaintiff's IP Log is May 2011.

19  Under 17 U.S.C. § 507, the statute of limitations of a civil

20  copyright action is three years after the claim accrued.  Thus,

21  Plaintiff has ample time to file individual lawsuits should it

22  choose to do so.  Furthermore, Plaintiff's contractor CEG already

23  sent notices to each of the ISPs at issue, and requested that the

24  ISPs forward those notices to the addresses of the subscribers

25  associated with each allegedly infringing IP address.  Nicolini

26  Decl. ¶ 21.  Each notice included, among other things, an address

27  where the accused infringer can contact CEG to arrange for

28  settlement.  Id.  Thus, Plaintiff may obtain, and indeed may have

9

**United States District Court**
For the Northern District of California

1   already obtained, settlements from many of the alleged infringers

2   without Court-ordered discovery.[3]

3       Plaintiff argues that the Court should not rule on whether

4   joinder is proper at this stage in the case.  Application at 11.

5   Plaintiff does not flesh out this argument, but it provides a full-

6   page block quote from Call of the Wild Movie, LLC v. Does 1-1,062,

7   770 F. Supp. 2d 332, 344-345 (D.D.C. 2011), in which Judge Howell

8   reasons that considering severance at this juncture would introduce

9   "significant obstacles in [plaintiffs'] efforts to protect their

10  copyrights from illegal file-sharers and this would only needlessly

11  delay their cases."  Judge Howell proceeds to explain that the

12  plaintiffs would need to file thousands of separate lawsuits, pay

13  the associated filing fees, and then move to issue separate

14  subpoenas to ISPs in search of each defendant's identifying

15  information.  Id.  Be this as it may, the Court finds that the

16  potential for coercing unjust settlements from innocent defendants

17  trumps Plaintiff's interest in maintaining low litigation costs.

18  Moreover, other courts and commentators have noted the flipside of

19  Judge Howell's argument.  Namely, "a consequence of postponing a

20  decision on joinder in lawsuits similar to this action results in

21  lost revenue of perhaps millions of dollars (from lost filing fees)

22  and only encourages [plaintiffs in copyright actions] to join (or

23  misjoin) as many doe defendants as possible."  IO Group, 2011 U.S.

24  Dist. LEXIS 14123, at *20 n.5 (citation omitted).

25  ///

26  ///

27  ———————————————

28  [3] The IP addresses listed in the IP log correspond to those
    subscribers who had not yet settled as of the time the Complaint
    was filed.  Nicolini Decl. ¶ 21.

**United States District Court**
For the Northern District of California

1    **V.    CONCLUSION**

2          For the reasons stated above, the court GRANTS IN PART

3    Plaintiff SBO Pictures, Inc.'s Ex Parte Application for Leave to

4    Take Limited Discovery.  Within ten (10) days of this Order,

5    Plaintiff shall serve on Doe 1's ISP a subpoena in the form

6    attached as Exhibit 1 to Plaintiff's Application.  The subpoena

7    shall include a copy of the Complaint and this Order.  The ISP

8    shall have thirty (30) days from the date of service upon it to

9    serve Doe 1 with a copy of the subpoena, the Complaint, and this

10   Order.  The ISP may serve Doe 1 using any reasonable means,

11   including written notice sent to Doe 1's last known address,

12   transmitted either by first-class mail or via overnight service.

13   The ISP and Doe 1 each shall have thirty (30) days from the date of

14   service upon them to file any motions in this Court contesting the

15   subpoena (including a motion to quash or modify the subpoena).  If

16   that thirty-day period lapses without Doe 1 or the ISP contesting

17   the subpoena, then the ISP shall have ten (10) days to produce to

18   Plaintiff the information responsive to the subpoena with respect

19   to Doe 1.

20          The ISP shall preserve all subpoenaed information pending the

21   ISP's delivering such information to Plaintiff, or the final

22   resolution of a timely filed and granted motion to quash the

23   subpoena.  Plaintiff may use any information disclosed in response

24   to the subpoena solely to protect its rights under the Copyright

25   Act, 17 U.S.C. § 101, et seq.

26          It is further ORDERED that Doe Defendants 2-3036 are SEVERED

27   from this action, and Plaintiff's claims against Doe Defendants 2-

28   3036 are DISMISSED without prejudice for improper joinder.

11

**United States District Court**
For the Northern District of California

1    Lastly, Plaintiff asks that the Court enlarge time for

2  Plaintiff to serve process on Doe Defendants until 180 days after

3  the date of this Order due to the delays involved in issuing

4  subpoenas to ISPs, receiving responses to those subpoenas, and

5  subsequently serving Doe Defendants.[4]  Even though only one Doe

6  Defendant remains in this action, the timeline set forth above

7  demonstrates that an enlargement of time is necessary.

8  Accordingly, the Court GRANTS Plaintiff's Application to Enlarge

9  Time.

10    Plaintiff also requests that no Case Management Conference be

11  held until approximately 210 days from the date of this Order in

12  order to allow for service of process and Doe Defendant's response.

13  Accordingly, the Case Management Conference currently scheduled for

14  December 9, 2011 is hereby continued to July 27, 2012, at 10:00

15  a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden

16  Gate Avenue, San Francisco, CA 94102.  The parties shall file a

17  Joint Case Management Statement with the Court at least seven (7)

18  days prior to the Conference.

19

20    IT IS SO ORDERED.

21

22    Dated:   November 30, 2011

23                                          UNITED STATES DISTRICT JUDGE

24

25

26

27
    _____
    [4] Plaintiff filed an Application for Enlargement of Time to Serve
28  Defendants along with its Application for Leave to Take Limited
    Discovery.  ECF No. 2.

12